**UNITED STATES of America,**

v.

**Roy GEER, Defendants.**

**No. 03–20566–CR–LENARD, 03–20566–CR–SIMONTON.**

United States District Court,
S.D. Florida.

June 2, 2004.

Harry C. Wallece, Jr., AUSA, Melanie Allen, AUSA, United States Attorney's Office, Miami, FL, for Plaintiffs.

Edward R. Shohat, Esq., Bierman Shohat Loewy & Pizzi, Miami, FL, for Defendants.

*OMNIBUS ORDER DENYING MANDATORY LIFE SENTENCE PURSUANT TO 21 U.S.C. § 841(b)(1)(A) FOR DEFENDANT GEER; GRANTING MINIMUM TWENTY (20) YEAR SENTENCE PURSUANT TO 21 U.S.C. § 841(b)(1)(A) FOR DEFENDANT GEER; AND DENYING DEFENDANT GEER'S MOTION TO STRIKE GOVERNMENT'S INFORMATION PROVIDING NOTICE OF INTENT TO USE PRIOR FELONY CONVICTIONS*

LENARD, District Judge.

**THIS CAUSE** is before the Court on the Information Providing Notice of Intent to Use Prior Felony Convictions for Sentencing Purposes (D.E.62), filed on August 25, 2003. On April 8, 2004, Defendant Roy Geer filed Motion to Strike And/or Response to Government's Information Providing Notice of Intent to Use Prior Felony Convictions for Sentencing Purposes. (D.E.249.) On April 29, 2004, the Government filed Government's Response to Geer's Motion to Strike And/or Response to Government's Information Providing Notice of Intent to Use Prior Felony Convictions for Sentencing Purposes. (D.E. 267.) Also relevant are two filings in response to the Defendant's Presentence Investigation Report.[1] On April 9, 2004, the Government filed Government's Objection to the Pre–Sentence Investigation Report (PSI) as to Defendant Geer. (D.E.250.) On April 20, 2004, Defendant filed Defendant Geer's Response to Government's Objection to the Pre–Sentence Investigation Report. (D.E.258.) On May 12, 2004, the Court held an evidentiary hearing pursuant to Title 21 U.S.C. § 851(c)(1). On May 20, 2004, the Government filed a Supplemental Response to Defendant Geer's Objections to Presentence Investigation Report. (D.E.286.) On May 21, 2004, the Defendant filed Reply to Government's Supplemental Response to Defendant Geer's Objection to Presentence Investigation Report. (D.E.288.) On May 24, 2004, the Court held a second sentencing hearing. This Order supplements the oral rulings made by the Court on May 24, 2004.

**I. Procedural Background**

On July 17, 2003, the Defendant Roy Geer was charged by Indictment with: (1) conspiracy to import into the United States cocaine in an amount of five kilograms or more, (2) attempt to import into the United States cocaine in an amount of five kilograms or more, (3) conspiracy to possess with intent to distribute cocaine in an amount of five kilograms or more, and (4) attempt to possess with intent to distribute cocaine in an amount of five kilograms or more. (D.E.30.) On February 23, 2004, a jury found Defendant Roy Geer guilty of all four counts.

Before trial commenced on August 25, 2003, pursuant to 21 U.S.C. § 851(a), the

---

1. The Presentence Investigation Report, disclosed on March 31, 2004, did not consider the enhancement of Defendant's sentence pursuant to Title 21 U.S.C. § 851(b)(1)(A). Upon receiving the Presentence Investigation Report, the Government verbally informed Probation of its prior filing in August of 2003, seeking a mandatory life sentence for Defendant Geer pursuant to Title 21 U.S.C.

§ 841(b)(1)(A). From that conversation, the Government concluded that Probation would not be recommending a mandatory life sentence for Defendant Geer. (D.E. 250, at 2, n. 1.) The Revised Presentence Investigation Report, issued on May 10, 2004, ultimately recommended that, pursuant to § 841(b)(1)(A), Defendant Geer receive a mandatory life sentence.

United States filed Information Providing Notice of Intent to Use Prior Felony Convictions for Sentencing Purposes. (D.E. 62, hereinafter (Inf. Re. Prior Convictions).) The Government's Notice stated its intent to rely at sentencing on Defendant's two prior convictions for felony drug offenses, 90–0946–CR–GONZALEZ and 91–0170–CR–KEHOE, in order to seek a mandatory life sentence pursuant to 21 U.S.C. § 841(b)(1)(A). (Id. at ¶¶ 3, 4.) The Government attached the Judgment Forms and the Indictments for Defendant Geer's prior convictions.[2]

After the jury returned a guilty verdict in the instant case, pursuant to 21 U.S.C. § 851(c), the Defendant Roy Geer filed a Motion to Strike and/or Response to Government's Information Providing Notice of Intent to Use Prior Felony Convictions for Sentencing Purposes. (D.E.249.) Defendant Roy Geer raised several arguments in support of his Motion to Strike and/or Response, including the argument that the sentencing enhancement pursuant to Title 21 U.S.C. § 841(b)(1)(A) should not apply to Geer's two prior convictions for conspiracy to possess with intent to distribute marijuana, because the convictions constituted only one prior felony drug episode for statutory enhancement purposes.

On May 12, 2004, the Court conducted a sentencing hearing, pursuant to Title 21 U.S.C. § 851(c)(1). At the hearing, the Court heard argument and evidence regarding whether Defendant Geer's two prior convictions constituted one or more criminal episodes for sentencing enhancement purposes. The Government presented as evidence certified copies of both convictions and the Presentence Investiga-

tion Reports (PSIs) for each conviction. (Sentencing Transcript, May 17, 2004 (hereinafter Sent. Tr. # 1) at 2.) Defendant Geer also relied on the Presentence Investigation Reports. Both the Presentence Investigation Report for 90–0946–CR–GONZALEZ, issued in August of 1991, and the Presentence Investigation Report for 91–0170–CR–KEHOE issued in July of 1991, were pre-guideline cases. Therefore there was no adoption of the factual findings contained in the PSIs for guideline purposes. Instead, the PSIs allowed for both a Prosecution and Defendant's version of the conduct underlying the offenses. Defendant Geer testified at his sentencing hearing to deny a portion of the Prosecution's version of the offense conduct in the PSI for 90–0946–CR–GONZALEZ. Geer was then cross-examined by the Government regarding both prior convictions.

On May 24, 2004, the Court conducted a continuation of the sentencing hearing. Pursuant to Title 21 U.S.C. § 851(b), the Court, before pronouncing sentence, inquired of Defendant Roy Geer whether he affirmed or denied that he had been previously convicted. Defendant Geer admitted his two prior convictions. (Sent. Tr. # 2 at 2–3.)

## II. Factual Background

### A. Prior Conviction, 91–0170–CR–KEHOE (Blanco Conspiracy)

On March 6, 2001, a two-count indictment was returned in Miami, Florida charging that Reginaldo Blanco, Ramon Corugedo, Juan Peron, Bernardino Torres–Hernandez, Roy Geer, Gus Males and

---

**2.** The Court notes that in 90–0946–CR–GONZALEZ, the Defendant pled guilty to Count One of the Superseding Information and the Indictment was dismissed. At sentencing on May 24, 2004, the Court requested that the Government supplement the record by filing the Superseding Information. (See Sentencing Transcript, May 24, 2004 (hereinafter Sent. Tr. # 2) at 1–2; see also Case No. 90–0946–CR–GONZALEZ, D.E. 261, Defendant Roy Geer Superseding Information (hereinafter Case No. 90–0946–CR Superseding Inf.).)

Luis Carrillo did conspire, with each other and with other persons both known and unknown to the Grand Jury, to (1) possess marijuana with intent to distribute and (2) to import marijuana. (D.E. 62, Inf. Re. Prior Convictions, Attach. Kehoe Indictment.) This criminal organization (hereinafter the "Blanco conspiracy") was headed by Reginaldo Blanco and Ramon Corugedo, with Roy Geer assuming a trusted position within the organization.[3] (D.E. 249, Mot. to Strike/ Resp., Attach. 91–0170–CR–KEHOE PSI (hereinafter "Blanco PSI"), Prosecution at 3.) On June 3, 1991, Roy Geer pled guilty to conspiracy to possess with intent to distribute marijuana, in violation of Title 21 U.S.C. § 846. (Inf. Re. Prior Convictions, Attach. Kehoe J.)

According to the Government, from on or about November 1, 1985, to on or about August 1, 1986, the Blanco organization conspired to import multi-ton quantities of marijuana from Colombia, via the Bahamas, into South Florida with the intent to profit from subsequent distribution. (Blanco PSI, Prosecution at 3.) Roy Geer describes his role as helping out with repairs of vessels used to smuggle marijuana, assisting with radio set-ups and helping with transport. (Blanco PSI, Defendant at 5.) Several overt acts were taken by Roy Geer as part of his role in the Blanco organization.

In November 1985, Blanco arranged for a Haitian freighter, the M/V Island King, to smuggle marijuana from Colombia to the United States. (Blanco PSI, Prosecution at 3.) Roy Geer was in charge of necessary repairs to the M/V Island King.

(*Id.* at 3; *see also* Defendant at 5–6; Sent. Tr. # 1 at 21–22.) In late 1985, Geer flew to Haiti to move the M/V Island King to Santo Domingo and make repairs. (Blanco PSI, Prosecution at 3; Defendant at 5.) Geer was unable to repair the M/V Island King, and it was sent to Venezuela to be dry-docked and repaired. (Blanco PSI, Defendant at 5.) In December of 1985, Geer met with Blanco and Bell, the captain of the M/V Island King, in Venezuela regarding plans for the smuggling operation. (Blanco PSI, Prosecution at 3; Defendant at 5; Sent. Tr. # 2 at 22.) Later, the vessel sailed to Colombia, picked up approximately 40,000 pounds of marijuana, and sailed for the Bahamas. (Blanco PSI, Defendant at 5–6.) In transit, it was arrested by the Dominican Republic Navy. *Id.* at 6.

During April of 1986, Blanco organized a group of small, fast boats and crews to offload marijuana, which was air-dropped in Bahamian waters. (Blanco PSI, Prosecution at 4; Defendant at 6.) Defendant Geer assisted in pulling the bales of marijuana out of the water and taking them to a larger lobster boat. (Blanco PSI, Defendant at 6.) Approximately 6,000 lbs of marijuana were recovered and brought in to South Florida. (Blanco PSI, Prosecution at 4; Defendant at 6.) Geer acted as a representative of the Blanco organization in delivering the marijuana from the air-drops to another criminal organization, the Barlow conspiracy.[4] (Blanco PSI, Defendant at 5.) Geer was present when the Blanco marijuana from the air-drops was

---

3. The Court will hereinafter refer to this criminal organization as the "Blanco conspiracy." The Court notes that the Presentence Investigation Reports use both the term "Blanco conspiracy" and the term "Blanco/Corugedo conspiracy" to refer to this organization.

4. The primary business of the Barlow conspiracy was the distribution of marijuana. Mr. Barlow maintained at least two warehouses in Miami–Dade County, for the storage and distribution of marijuana. In 90–0946–CR–Gonzalez, Geer is indicted for conspiring with Barlow to possess with intent to distribute marijuana. *Supra* text 7–9.

weighed at Barlow's warehouse in Opa Locka. *Id.*

In June of 1986, Blanco began preparations to smuggle approximately 30,000 pounds of marijuana from Colombia to South Florida via the M/V Gulf Master II. (Blanco PSI, Prosecution at 4.) At that time, Geer's Miami residence was being used as a radio base for the smuggling operation. (*Id.;* Defendant at 5, 6; Geer Sentencing Tr. # 1 at 20.) The M/V Gulf Master II was seized in transit by the Dominican Republic Navy. *Id.* at 4–5.

### B. Prior Conviction, 90–0946–CR–GONZALEZ (Barlow Conspiracy)

On December 10, 1990, a seventeen-count indictment was returned in Miami, Florida charging in Count One that James Mark Barlow, Carl Bilotti, John Nutt, Roy Geer, Daryl Bolin, Philip Lee Alexander, Fabian Leon Flanders, Robert Louis Chiariello, John Henry Harris and Richard Campbell did conspire, with each other and other persons both known and unknown to the Grand Jury, to possess with intent to distribute marijuana, in violation of Title 21 U.S.C. § 846. (Inf. Re. Prior Convictions, Attach. Gonzalez Indictment.) On May 21, 1991, Defendant Roy Geer pled guilty to Count One of the Superseding Information. (Case No. 90–0946 Superseding Inf.)

The Superseding Information Count One states that from about October 1985 through February 1987 at Miami–Dade County, Roy Geer conspired to possess with intent to distribute marijuana in violation of Title 21 U.S.C. § 841(a)(1). *Id.* In furtherance of this conspiracy, the defendant committed, "at least one of the following overt acts, among others: (1) In about March or April 1986, the Defendant assisted in the weighing of about 4,000 pounds of marijuana in a warehouse located at 14035 N.W. 19th Street, Opa Locka, Florida; (2) In about October, 1986, the Defen-

dant distributed about 2,200 pounds of marijuana to several persons, including Steve and John Piscano." *Id.*

According to the Government, between May 1982 and August 1987, James Mark Barlow organized and led a group of people who trafficked in marijuana. (D.E. 249, Mot. to Strike/Resp., Attach. 90–0946–CR–GONZALEZ PSI (hereinafter Barlow PSI), Prosecution at 3.) Mr. Barlow's primary business was the distribution of marijuana. *Id.* Mr. Barlow maintained storage sites, including a warehouse at 6330 NW 4 Court and a warehouse at 4127 NW 132 Street in Miami, Florida. *Id.* He also operated a hydroponic growth operation at both 14035 NW 19 Avenue and 2526 NE 191 Street in Miami, Florida. *Id.* On several occasions, Barlow organized boats to receive air-drops of marijuana and carry them to larger ships, from which the marijuana would ultimately be transported to Barlow's warehouses. *Id.*

Some loads of marijuana imported by the Blanco conspiracy were stored and distributed by the Barlow organization. *Id.; see also* Defendant at 5. Defendant Geer states that he acted as, "Blanco's representative when [the Blanco] marijuana was weighed at Mark Barlow's warehouse in Opa Locka." (Barlow PSI, Defendant at 5.) At his sentencing hearing on May 12, 2004, Geer admits that he also received money from Barlow for Blanco. (Sent. Tr. # 1 at 9, 11.) The Government also alleges that, in October of 1986, Geer assisted Barlow by distributing about 2,200 pounds of marijuana to several persons, including Steve and John Piscano. (Barlow PSI, Prosecution at 4.) Defendant Geer testified at his May 12, 2004 sentencing hearing and denied that allegation. Geer testified, on cross-examination, as follows:

Q: What did you do for the Barlow organization?

A: The Barlow organization, nothing.

Q: Let me be more specific. Between May 1982 and August 1987, what did you do with anyone that you thought was associated solely with the Barlow organization?

A: Helped weigh marijuana from Blanco.

Q: Did you do any radio work for them?

A: No, I did not.

Q: Were you involved in repairing any boats for them?

A: No, I was not.

Q: Or having someone else repair boats for them?

A: No.

Q: How do you know Steve and John Piscano or do you know them?

A: I do not know them.

Q: Never met them?

A: No, I have not.

## III. Parties' Arguments

### A. *Mandatory Life Sentence Pursuant to 21 U.S.C. § 841(b)(1)(A)*

Defendant Geer argues that his prior convictions do not qualify as two or more prior convictions, requiring imposition of a mandatory life sentence pursuant to Title 21 U.S.C. § 841(b)(1)(A), because they arose out of a single criminal episode. (D.E. 62, Mot. to Strike/Resp. at 2–6.) Geer argues that his involvement in the Barlow conspiracy charged in Case No. 90–0946–CR–GONZALEZ was solely in his capacity as a representative of the Blanco conspiracy charged in Case No. 91–0170–CR–KEHOE. (D.E. 258, Resp. to Govt. Obj. at 3.) Any "help" which Geer rendered to the Barlow organization, e.g. by transporting and weighing marijuana and by collecting money from Barlow for Blanco, was incidental to Geer's role in the Blanco organization. *Id.*

The Government argues that Geer's prior convictions are not fairly characterized as a single criminal episode. (D.E. 250, Obj. to PSI.) The Government argues that the convictions involve two separate conspiracies with different members. *Id.* at 2. Defendant Roy Geer conspired with Reginaldo Blanco, Ramon Corugedo, Juan Peron, Bernardino Torres–Hernandez, Gus Males and Luis Carrillo, to possess with intent to distribute marijuana in 91–0170–CR–KEHOE. *Id.* Geer conspired with these individuals to import and possess with intent to distribute multi-ton quantities of marijuana from Colombia, via the Bahamas, into South Florida. *Id.* In Case Number 90–0946–CR–GONZALEZ, Geer's co-defendants included James Mark Barlow, Carl Bilotti, John Nutt, Daryl Bolin, Philip Lee Alexander, Fabian Leon Flanders, Robert Louis Chiariello, John Henry Harris, and Richard Campbell. *Id.* at 3. Geer conspired with these individuals to distribute marijuana. *Id.* Roy Geer's role was allegedly different in each conspiracy. In the Blanco conspiracy, Roy Geer acted as a radio communications expert, a supervisor of necessary repairs to vessels, and as a trouble-shooter. (Sent. Tr. # 1 at 3.) In the Barlow organization, Geer's role was to transport and weigh marijuana, collect money for the Blanco group and assist Barlow in distribution. *Id.* The Government asserts that Roy Geer was convicted once in 91–0170–CR–KEHOE and once in 90–0946–CR–GONZALEZ, because he committed separate acts in different locations on different days for two separate organizations. (Obj. to PSI at 3.)

Defendant Roy Geer denies that he was a member of the Barlow organization and argues instead that he was involved with Barlow solely as a representative of Blanco. (D. Resp. to Govt. Obj. at 5.) In support thereof, Defendant Geer points to his admission in both PSIs that "[he] helped by being Blanco's representative when their marijuana was weighed at

Mark Barlow's warehouse in Opa Locka." (Blanco PSI, Defendant at 5; Barlow PSI, Defendant at 5.) Defendant Geer also relies on the Probation Officer's assessment of Geer's role in the Barlow organization. The Probation Officer states, "Geer helped to transport and weigh marijuana for Blanco through the Barlow organization and delivered money from the Barlow organization to the Blanco/Corugedo organization." (Barlow PSI at 12.) Geer specifically denies the allegation contained only in the Prosecution's Version of his offense conduct, stating that he distributed marijuana for the Barlow organization.[5] (D. Resp. to Govt. Obj. at 4–5 & n. 3.)

In response, the Government argues that Defendant Geer is prohibited from challenging the validity of his conviction, for conspiracy to possess with intent to distribute in the Barlow case, by Title 21 U.S.C. § 851(e). The conviction became final in 1991, or more than five years before the date of the Government's Information in the instant case, alleging its intent to seek a sentencing enhancement pursuant to 21 U.S.C. § 841(b)(1)(A). (Supp. Resp. at 2.) In the alternative, the Government seeks a continuance in order to acquire the transcripts of the plea colloquy and sentencing hearing for Geer's prior convictions. (Id. at n. 1.)

Defendant Geer contends that he has not challenged the validity of his prior convictions. (Reply to Supp. Resp. at 1.) Instead, Geer asserts that he is challenging the legal effect of his prior convictions for purposes of the statutory enhancement

provision of 21 U.S.C. § 841(b)(1)(A). *Id.* Geer further argues that the Government has not established that this is an exceptional case warranting a continuance of sentencing. *Id.* at 2.

### B. Fifth, Sixth and Eighth Amendment Claims

If the Court determines that a mandatory life sentence pursuant to § 841(b)(1)(A) is applicable, Defendant Geer asserts that an enhancement under 21 U.S.C. § 841(b)(1)(A) would violate his Fifth Amendment Right to Due Process, Sixth Amendment Right to a Jury Trial, and his Eighth Amendment Right Against Cruel and Unusual Punishment (Mot. to Strike/ Resp., at 6–14.). The Government contends that the constitutional issues raised by Defendant Geer regarding the applicability of Section 841(b)(1)(A) have been addressed by the Supreme Court and the Eleventh Circuit, and therefore the application of the sentencing enhancement to the Defendant is constitutionally permissible. (D.E.267.)

### IV. Analysis

#### A. Motion to Strike

■ Defendant Geer requests that the Court strike the Government's Information Providing Notice of Intent to Use Prior Felony Convictions for Sentencing Purposes. Striking a pleading is a "drastic remedy to be resorted to only when required for the purposes of justice." *Augustus v. Bd. of Public Instr. of Escambia County,* 306 F.2d 862, 868 (5th Cir.1962).[6]

---

**5.** On April 20, 2004, Geer provided notice to the Government that he intended to testify at sentencing on May 12, 2004, that he only committed those acts contained in Defendant's Version of the Offense in the Barlow PSI. (D. Resp. to Govt. Obj. at n. 3.) In the Defendant's Version of the Offense in the Barlow PSI, Geer admits the acts he took in furtherance of the Blanco conspiracy. (Barlow PSI, Defendant at 4–6.) In terms of the

Barlow conspiracy, Geer only admits to acting as Blanco's representative when the marijuana was weighed at Barlow's warehouse. (Barlow PSI, Defendant at 5.)

**6.** The United States Court of Appeals for the Eleventh Circuit has adopted as binding precedent all decisions rendered by the former Fifth Circuit prior to October 1, 1981. *Bon-*

Furthermore, it is inappropriate for a district court to resolve a disputed question of fact on the basis of a motion to strike. *Id.* at 868. There is a question of fact in this case regarding whether Geer's prior convictions in Case No. 90–0946–CR–GONZALEZ and Case No. 91–0170–CR–KEHOE qualify as two prior convictions for sentencing enhancement purposes. *Rice,* 43 F.3d at 606. Defendant Geer's Motion to Strike is therefore denied.

### B. Government's Objection to Preliminary PSI

The Government's Objection to the Presentence Investigation Report, disclosed on March 31, 2004, is moot. The Revised Presentence Investigation Report, issued on May 10, 2004, recommended imposition of a mandatory life sentence pursuant to § 841(b)(1)(A).

### C. Statute of Limitations, 21 U.S.C. § 851(e)

Title 21 U.S.C. § 851 provides the procedures for the Government to establish a defendant's prior felony drug convictions. The statute bars a defendant from challenging the validity of a prior conviction which occurred more than five years before the date of the information alleging such prior conviction. 21 U.S.C. § 851(e). The statute provides, however, that a defendant may deny "any allegation of the information of prior conviction" in writing. 21 U.S.C. § 851(c)(1).

On August 25, 2003, the Government filed information providing notice of its intent to use Geer's prior felony convictions. (D.E.62.) Defendant Geer's prior convictions both became final in 1991. (Supp. Resp. at 2.) Accordingly, Defendant Geer is barred from challenging the validity of either of his prior convictions.

■ Defendant Geer, however is not challenging the validity of either conviction. (Sent. Tr. # 2 at 3.) Instead, Geer's arguments are directed at the legal effect of the prior convictions for purposes of sentencing. The statute of limitations contained in Title 21 U.S.C. § 851(e) does not bar the Defendant from pursuing this line of argument. *See e.g., Rice,* 43 F.3d at 603 (defendant challenged legal effect of prior convictions from 1979, 1980 and 1983, whereas the enhancement triggering offense occurred in 1990).

Defendant Geer is similarly not barred by 21 U.S.C. § 851(e) from challenging factual allegations raised by the Prosecution regarding his prior convictions, so long as those factual allegations were distinct from the validity of the conviction itself. *See* 21 U.S.C. § 851(e)(stating that the defendant may deny any allegation of the information of prior conviction in writing). Defendant Geer objected in writing prior to the sentencing hearing on May 12, 2004, to the Prosecution's allegation that he distributed marijuana for Barlow. *See supra* at note 5. Geer's objection does not undermine the validity of his conviction in the Barlow case. Defendant Geer's plea of guilty did not require him to admit or deny distribution of marijuana for Barlow. (Case No. 90–0946–CR Superseding Inf.) Geer pled guilty to conspiring to possess with intent to distribute and in furtherance thereof to "*at least one* of the following overt acts": (1) the weighing of about 4,000 pounds of marijuana at a warehouse operated by the Barlow organization, and/or (2) the distribution of 2,200 pounds of marijuana to several persons, including Steve and John Piscano. *Id.* (emphasis added). The validity of Geer's conviction may rest on either act, and Geer does not dispute his participation in the weighing of marijuana at Barlow's warehouse. Therefore, Geer's challenge to the Government's

allegation that he distributed marijuana for Barlow is not a challenge to the validity of his conviction. Accordingly, he may pursue this line of argument without running afoul of the statute of limitations provided for in Title 21 U.S.C. § 851(e).

### C. Sentencing Enhancement, 21 U.S.C. § 841(b)(1)(A)

#### C1. Standard of Review

Title 21 U.S.C. § 841(b)(1)(A) provides in pertinent part that:

If any person [attempts or conspires to possess with intent to distribute 5 kilograms or more of a substance containing cocaine] after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than twenty years and not more than life imprisonment. . . .

If any person [attempts or conspires to possess with intent to distribute 5 kilograms or more of a substance containing cocaine] after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release.

In assessing the propriety of a sentence enhancement under 21 U.S.C. § 841(b)(1)(A), a sentencing court may consider the relationship between previous convictions to ascertain if they constitute a single criminal episode and thus should be counted only as one prior conviction. *United States v. Rice*, 43 F.3d 601, 605 (11th Cir.1995). The question of whether prior convictions were related or unrelated for purposes of section 841(b)(1)(A) involves a factual inquiry by the sentencing court. *Id.* at 606. In determining whether a defendant's prior convictions consti-

tute a single criminal episode, the Court should determine whether the convictions were separate in time, separate in locale, and whether they required separate planning and execution. *Id.* at 608.

If the multiple convictions arise from acts distinct in time, even though they may have been part of a larger conspiracy, they are separate criminal episodes for purposes of sentencing enhancement. *Id.*; *(see also United States v. Pace*, 981 F.2d 1123, 1132 (10th Cir.1992); *United States v. Hughes*, 924 F.2d 1354, 1361–1362 (6th Cir.1991)). A criminal episode is "a punctuated occurrence with a limited duration." *Hughes*, 924 F.2d at 1361. It may be part of a series of criminal acts, but if it "forms a separate unit within the whole" then it constitutes a separate criminal episode. *Id.*

Title 21 U.S.C. § 851 provides the procedures for the Government to establish a defendant's prior felony drug convictions. Upon the denial of any allegation of the information of prior convictions, the Court shall hold an evidentiary hearing in which both sides may present evidence. 21 U.S.C. § 851(c)(1). The United States Attorney shall have the burden of proof beyond a reasonable doubt on any issue of fact. *Id.*

#### C2. Analysis

Before inquiring into whether the Defendant's prior convictions constitute one criminal episode, the Court must determine what acts the Defendant performed for the Barlow organization. At the evidentiary hearing, the Government relied solely on the Prosecution Version of the Offense contained in the Barlow PSI to allege that Geer distributed marijuana for Barlow.[7] The Government produced no

---

7. As stated previously, the Barlow PSI, issued in August of 1991, was a pre-guideline case. Therefore, there was no adoption of factual findings contained in the PSI for guideline

purposes. Instead, the PSI report allowed for both a Prosecution and Defendant's version of the conduct underlying the offense.

additional evidence to substantiate this allegation. There is no evidence in the record that Geer ever admitted to distributing marijuana for Barlow. Defendant Geer pled guilty to the Superseding Information which charged him with "*at least one* of the following overt acts" in furtherance of the conspiracy to possess with intent to distribute: (1) assistance in the weighing of about 4,000 lbs of marijuana in [Barlow's warehouse] and (2) distribution of 2,000 pounds of marijuana to several persons. (Case No. 90–0946–CR Superseding Inf. (emphasis added).) It is therefore reasonable to interpret his plea as admitting only to his role in weighing Blanco's marijuana at Barlow's warehouse. The Court further notes that there is no evidence in the record that the district court, in Case No. 90–0946–CR–GONZALEZ, adopted the Prosecution's version of the offense, stating that Geer distributed marijuana.[8] The Court therefore has only the version of the offense conduct by the Prosecution contained in the Presentence Investigation Report, and the conflicting testimony by Defendant Geer that he did not distribute marijuana for Barlow. The United States Attorney was obliged to prove beyond a reasonable doubt that Geer in fact distributed marijuana for Barlow. 21 U.S.C. § 851(c). Given the lack of evidence provided by the Government, the Court finds that the United States failed to meet its burden of proof regarding the factual allegation that Defendant Geer distributed 2,200 pounds of marijuana to several persons, including John Piscano.

The factual inquiry for the Court is therefore limited to the question of wheth-

er Geer's acts in the Barlow organization, as a representative of the Blanco conspiracy, constitute a separate criminal episode. The Court's inquiry is complicated by the fact that Geer's prior convictions are both for conspiracy. Geer pled guilty to conspiracy to possess with intent to distribute in both Case No. 91–0170–CR–KEHOE and 90–0946–CR–GONZALEZ. (Inf. Re. Prior Convictions, Attach. Kehoe J., Gonzalez J.; *see also* Case No. 90–0946–CR–GONZALEZ, D.E. 261, Roy Geer Plea Agreement.) The Court therefore must inquire into whether the agreement reached between Geer and his co-conspirators in the Barlow organization constituted a distinct "criminal episode" from the agreement he had made with members of the Blanco organization.

Based upon the evidence presented at sentencing, the Court finds that the overt acts which Geer took in furtherance of the Blanco organization are inclusive of the overt acts he took in furtherance of the Barlow conspiracy. From November of 1985 to August of 1986, Geer committed a series of acts in furtherance of the Blanco conspiracy. In late 1985, Geer flew to Haiti to make repairs to the M/V Helga so that it would be seaworthy and able to transport marijuana. (Blanco PSI, Prosecution at 3, Defendant at 5–6.) Unable to repair the M/V Helga, he assisted in its transport to Venezuela for further repairs and met with his co-conspirators in Venezuela for the purpose of planning the smuggling operation. (Blanco PSI, Defendant at 5.) In April of 1986, when Blanco's planes dropped over 6,000 lbs of marijuana

---

8. The Government was placed on notice on April 20, 2004 that Defendant Geer intended to dispute the Prosecution Version of the offense conduct. *Supra* at note 5. The Court specifically provided the Government the opportunity to present evidence at the May 12, 2004 hearing. A month after having notice and more than a week after the May 12, 2004 hearing, the Government belatedly requested in a footnote a two week continuance, before sentencing, stating that the Government might be able to provide transcripts of the plea colloquy and/or sentencing for Case No. 90–0946–CR–GONZALEZ that might prove relevant to the Court's inquiry.

into Bahamian waters, Geer assisted in pulling the bales of marijuana out of Bahamian waters and in transporting them to a larger lobster boat. *Id.* at 6. In furtherance of both conspiracies, Geer then transported the marijuana recovered from the air-drops to Barlow's warehouse. (Blanco PSI, Prosecution at 5; Barlow PSI, Prosecution at 3–4.) [9] Then, in June of 1986, while Blanco made preparations to import 30,000 lbs. of marijuana into South Florida, Geer's residence was used as a radio base for smuggling operations. *Id.* at 5.

From a review of the acts alleged in the two PSIs, Geer's conspiracy with Blanco is not distinct in time from his conspiracy with Barlow. His acts for Blanco span from November of 1985 to August of 1986, which includes his acts in furtherance of the Barlow organization in April of 1986. The geographic reach of Geer's acts in the Blanco conspiracy encompasses Geer's acts in furtherance of the Barlow conspiracy. In furtherance of the Blanco conspiracy to import marijuana, Geer traveled to Haiti, Venezuela and Bahamian waters. He also operated a radio base for the Blanco smuggling operation at his residence in Miami. He then delivered marijuana in aid to both the Blanco and Barlow groups to Barlow's warehouse in Opa Locka. Most importantly, there is no evidence that Geer's agreement with Barlow required separate planning and execution from Geer's agreement with Blanco. Geer acted as Blanco's representative in transporting the marijuana, weighing it, collecting money from Barlow and delivering the money to Blanco.

Pursuant to Title 21 U.S.C. § 851(e), it is the Government's burden to show beyond a reasonable doubt facts sufficient for this Court to find that Defendant Geer's conspiracy with Barlow constituted a separate criminal episode from his prior agreement with Blanco. Although the Government has shown that the Blanco and Barlow organizations were two distinct criminal groups, the Government has failed to show beyond a reasonable doubt that Geer entered into a conspiracy with Barlow distinct from his conspiracy with Blanco. As stated by the Government, the Blanco organization primarily imported marijuana from Colombia, via the Bahamas to the United States, whereas the Barlow organization primarily distributed marijuana through its warehouses in Miami–Dade County. (Blanco PSI, Prosecution at 3; Barlow PSI, Prosecution at 3.) Also, the two organizations consisted of different members. (Inf. Re. Prior Convictions, Attach. Kehoe Indictment, Gonzalez Indictment.) Having reviewed the evidence in both PSIs, Defendant Geer did not enter into an agreement with Barlow that was distinct in time, location, planning or execution from his prior agreement with Blanco. The Court finds that Defendant Geer's acts in furtherance of the Barlow conspiracy were solely as a representative of the Blanco organization.

Accordingly, Defendant Geer's prior convictions under Case No. 91–0170–CR–KEHOE and 90–0946–CR–GONZALEZ constitute one criminal episode for purposes of sentencing. Defendant Geer is therefore subject to a minimum term of imprisonment of twenty (20) years. 21 U.S.C. § 841(b)(1)(A).

---

**9.** In the Blanco PSI, the Prosecution alleges that Blanco organized an air drop of marijuana in to Bahamian waters, and that members of the Blanco conspiracy recovered the bales of marijuana and transported them to Barlow's warehouse in Opa Locka. (Blanco PSI, Prosecution at 4.) In the Barlow PSI, the Prosecution states that Geer worked as a member of the Blanco/Corugedo smuggling organization. (Barlow PSI, Prosecution at 3.) The Prosecution then alleges that Roy Geer helped to transport and weigh marijuana for Barlow and Blanco. *Id.* at 3–4.

### D. Constitutional Challenges to Application of Sentencing Enhancement, Pursuant to 21 U.S.C. § 851(b)(1)(A)

Given the Court's ruling that Defendant Geer is not subject to mandatory life imprisonment pursuant to 21 U.S.C. § 851(b)(1)(A), Geer's constitutional challenges to imposition of a mandatory life sentence are moot.

Nonetheless, the Court notes that the application of Title 21 U.S.C. § 841(b)(1)(A) to Defendant Geer would be constitutionally permissible. In support of his claim that application of § 841(b)(1)(A) violates his Fifth and Sixth Amendment rights, Defendant Geer relies primarily on *Apprendi* to argue that his prior convictions are facts that expose him to greater and/or additional punishment, and therefore must be submitted to a jury. (Mot. to Strike/ Resp. at 6–10). *Apprendi* by its own terms does not consider "prior convictions" to be an "element" of an offense or a "fact" that must be submitted to the jury. *Apprendi v. New Jersey*, 530 U.S. 466, 489–490, 120 S.Ct. 2348, 2362, 147 L.Ed.2d 435 (2000); *see also Almendarez–Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998)(stating that recidivism is a sentencing factor); *United States v. Guadamuz–Solis*, 232 F.3d 1363 (11th Cir.2000)(*per curiam*)(affirming that *Almendarez–Torres* is controlling law post-*Apprendi*). Defendant Geer's argument that a life sentence pursuant to § 841(b)(1)(A) violates his Eighth Amendment Right to be free from cruel and unusual punishment is equally unavailing. *United States v. Willis*, 956 F.2d 248 (11th Cir.1992)(finding that the application of a mandatory life sentence pursuant to § 841(b)(1) is not cruel and unusual punishment as proscribed by the Eighth Amendment); *see also Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991)(upholding mandatory life imprisonment and stating that severe, mandatory penalties may seem disproportionate, but they are not unconstitutional under the Eighth Amendment).

Accordingly, it is

**ORDERED AND ADJUDGED** as follows:

1. Defendant Geer's Motion to Strike Government's Information Providing Notice of Intent to Use Prior Felony Convictions for Sentencing Purposes (D.E.249) is **DENIED.**

2. The Government's Request at Sentencing for Imposition of a Mandatory Life Sentence, pursuant to 21 U.S.C. § 841(b)(1)(A), is **DENIED.** A Minimum Term of Imprisonment of Twenty (20) Years, pursuant to 21 U.S.C. § 841(b)(1)(A), is **GRANTED.**